## BANK OF GARFIELD *v.* CLARK *et al.*

1. Where on the back of a deed to a corporation there was entered a transfer of such deed and the property described therein, signed in the name of the company, its president, and its "G. M." secretary and treasurer, and after the name of each appeared " (L. S.)," but there was no reference in the body of the transfer to a seal, and this instrument was attested like a deed, and recorded, in a case where the authority of the officers to make such transfer was involved it was not admissible as prima facie importing authority.

2. If officers of a corporation executed, even though without previous authority, a transfer of title to land belonging to it, and thereby procured a loan, which was subsequently renewed on the same security, the corporation could not retain the fruits of the transfer and at the same time successfully defend against it as being unauthorized.

3. If, subsequently to the making of such transfer and the obtaining of money by means thereof, a mortgage was made by the corporation to stockholders and directors thereof to secure them against loss by reason of having indorsed its paper, they taking with notice of the facts and with a recital in the mortgage that it was a second lien, they would be in no better position to contest the validity of the transfer than the corporation itself.

4. It was error to reject evidence tending to show that money was obtained for the corporation by means of the transfer, and was used for its benefit with the knowledge of the directors, on the ground that such "transfer would not be valid unless it was executed by the authority of some by-law, or under the charter directly or indirectly, or by some resolution duly passed."

5. In connection with the evidence touching the making of the transfer, the securing of money thereon and its use for the benefit of the corporation, and the knowledge of the stockholders and directors and the recital in the mortgage taken by them, it was error to reject such transfer from evidence.

6. The assets of the corporation having been placed in the hands of a receiver, and, on his application and by agreement, an order having been passed for the sale of the real estate free from encumbrances, leaving questions of priority for subsequent determination, a statement, in the application of the receiver for leave to sell, that the transferee held the title to the land as security, was not admissible to prove that fact as against stockholders and creditors contesting the validity of the transfer.

7. Ordinarily the minutes of a corporation show the formal actions of its directors and stockholders; and before parol evidence thereof can be introduced, they should be produced or accounted for. If such action was taken, but not entered on the minutes, this should be shown.

8. The evidence in support of the contention that the transfer of the corporate property to secure an indebtedness was infected with usury, and was therefore void, was not such as to authorize the direction of a verdict on that ground.

October 17, 1912.

Equitable intervention. Before Judge Rawlings. Emanuel superior court. October 28, 1911.

Under equitable proceedings begun by stockholders, the property of the Farmers Mercantile Company was, by consent, placed in the hands of a receiver, and various creditors set up their claims for payment. The Bank of Garfield claimed to be a creditor holding a security on real estate. On December 19, 1905, one C. R. Gay executed to the Farmers Mercantile Company a deed. On the back of this was entered the following transfer: "Georgia, Emanuel

County. For and in consideration of twenty-six hundred and
eight and 89/100 dollars, being value received, we hereby transfer
all our rights, title, and interest in and to the within deed, together
with the property described therein to Bank of Garfield, Garfield,
Ga. This 26th day of June, 1906. [Signed] The Farmers Mer-
cantile Company (L. S.) ; J. A. Parrish, President (L. S.) ; W. C.
Tucker, G. M. Sect. and Treas. (L. S.). Signed, sealed, and de-
livered in presence of us, the day and year above written: C. R.
Gay; R. J. Walsh, N. P., E. Co., Ga." This was recorded on
December 9, 1907. On July 9, 1908, the company executed a mort-
gage to stockholders, some of whom were also directors and officers,
reciting that they had indorsed a note to the bank and other de-
scribed notes, and that the mortgage was given to secure them
against loss. It covered the same lot as that to which the bank
claimed to hold title as security, and recited that "This mortgage
is a second lien on the lot last described." There was some evi-
dence tending to show that the note payable to the bank and
claimed to be secured was a renewal of the one originally given
and for which the transfer was made as security. A witness also
testified that when the first loan was made by the bank, it was
made to improve the property, and that it was agreed that when
the improvements were made the bank would transfer its deed as
security, which was done; also, that the directors and stockholders
had notice of the receipt of the money from the bank and the
transfer to it. Much evidence tending to prove these facts was
ruled out by the court, but some was admitted. The stockholders
and directors who held the mortgage to secure themselves against
loss set up the mortgage as a lien, and attacked the security claimed
by the bank, on the ground that it was infected with usury and
was made without authority. Certain creditors also attacked it
on the ground that it was infected with usury and that the trans-
fer to the bank was dated before the note, and did not secure it.
Some creditors who held notes indorsed by the holders of the
mortgage also sought to have the proceeds applied to their claims.
When the transfer was offered in evidence, it was rejected by the
judge, as well as other evidence above mentioned. At the close
of the evidence, the judge directed a verdict upholding the mort-
gage of the directors and stockholders, and finding against the
claim of the bank as a secured creditor. The bank moved for a
new trial, which was refused, and it excepted.

*Saffold & Larsen,* for plaintiff in error.

*Smith & Kirkland, Williams & Bradley, Hill & Anderson, Dixon & Larsen,* and *Lee Godfrey,* contra.

LUMPKIN, J. (After stating the foregoing facts.) The whole case revolves about the question of the validity of the transfer of the deed made to secure the bank. It did not recite that it was a sealed instrument, nor was the corporate seal of the company attached to it. The name of the company was signed, followed by that of its president and its "G. M." and secretary and treasurer. Presumably "G. M." stood for general manager. Opposite each were the letters "L. S.," enclosed in parenthesis. This was not enough to make the instrument admissible as prima facie importing authority on the part of the officers of the company who executed it. *Brooks* v. *Kiser,* 69 *Ga.* 762.

In *Jones* v. *Ezell,* 134 *Ga.* 553 (68 S. E. 303), under a creditors' bill against a corporation stockholders intervened and attacked a mortgage on the ground that the officers of the corporation were without authority to execute it. In the opinion (on page 556) it was said: "If on the trial of the case it should appear that the officers were without authority to execute the various contracts, but did in fact execute them, and the fruits thereof were applied to the proper corporate use, the corporation will still be liable, notwithstanding its officers may have been without specific authority to execute the particular form of contract. The corporation can not retain the property or money of the creditor, and successfully defend because it was obtained by an ultra vires act of its officers." The intervening stockholders in that case had no greater right to defend than the corporation itself. See also *Towers Excelsior &c. Co.* v. *Inman,* 96 *Ga.* 506 (23 S. E. 418); *Johnson & Harrold* v. *Mercantile Trust Co.,* 94 *Ga.* 324 (21 S. E. 576); *Butts* v. *Cuthbertson,* 6 *Ga.* 166, 171. If it should be proved that the company obtained the bank's money by means of this transfer of title as security, and used it, the company would not be permitted to keep the fruits of its officers' acts and at the same time repudiate the contract, although there may have been no formal resolution authorizing the giving of the security. Nor would the directors and stockholders of the company, who took a subsequent mortgage to secure themselves against loss by reason of indorsing the bank's notes, and who had notice of the facts, be

allowed to repudiate the transfer and successfully assert a priority over it by virtue of the junior mortgage held by them. Especially is this true where their own mortgage recited that it was a second lien. It does not appear that there was any other lien claimed on the real estate, except that asserted by the bank and the mortgage held by these stockholders and directors.

It was competent to introduce evidence to prove the facts of the transaction: whether the company obtained the money upon the transfer, whether the stockholders and directors had notice of the fact, and whether the money was used in improving the very property which these stockholders and directors are now seeking to subject to their mortgage. If the company was insolvent when the mortgage was given to the stockholders and directors, the ruling in *Atlas Tack Co.* v. *Exchange Bank,* 111 *Ga.* 703 (36 S. E. 939), would apparently apply.

It is unnecessary to take up each of the grounds of the motion where evidence on this subject was rejected, and deal with it separately. After rejecting several pieces of evidence, an objection was made to certain questions as not being competent, and the court said: "I don't think so. Under my view of it, I will have to hold that the transfer would not be valid unless it was executed by the authority of some by-law, or under the charter directly or indirectly, or by some resolution duly passed. Unless you can show that, I will have to exclude all evidence along the line as to the debt. I understand that is admitted; so it looks like it is consuming time practically for nothing, to travel along this line that is being traveled now."

Some of the evidence offered was objectionable in the form in which it was tendered. Thus it is not competent for a witness to testify broadly what another person knew, or that the company was benefited, or that the officers had authority, or the like. These things are matters of conclusion. But the presiding judge evidently did not base his ruling on such matters of form, but on the ground that, in the absence of specific authority, the company would not be bound. There was some evidence in the record tending to support the contention that money was advanced when the transfer of the deed was executed and on the faith of it, and that the later note was a renewal. In connection with the recital in the mortgage to the stockholders and directors and the other evi-

dence in the record, the transfer to the bank was admissible in evidence, without discussing its attestation or registration.

The statement of the receiver, in an application to sell, in which he referred to the bank as holding title, was not admissible as binding on the stockholders and creditors. The presiding judge did not adjudicate this to be true, but an interlocutory order for the sale of the property free from encumbrances was granted, reserving the question of the claim of priority for future adjudication.

What has been said above covers in substance the rulings of the court in erroneously excluding evidence on the theory that nothing would suffice to make the transfer to the bank good except the production of a specific charter provision or a resolution on the minutes. If it be sought to show formal action by the directors or stockholders, the minutes should be produced or accounted for. If a resolution was in fact passed, but not entered on the minutes, this should be shown. It is not competent, without laying a sufficient foundation therefor, to introduce parol evidence that directors acted on a certain transaction, or that the corporation "agreed" to a certain thing, where the issue is whether the officers or agents who acted had authority to bind the corporation in the transaction.

The difficulty in dealing with certain grounds of the motion for new trial is increased by the absence of a statement as to the objections which were made and sustained, so that the exact ruling of the court is left to inference.

The evidence on the subject of usury did not authorize the direction of a verdict. *Judgment reversed. All the Justices concur.*